## BRYAN v. KALES.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 1287. Submitted January 7, 1890. — Decided March 3, 1890.

The defence of laches on the part of a plaintiff seeking relief in equity may be set up under a general demurrer.

The granting or refusing relief in equity on the ground of laches in applying for it must depend upon the special circumstances of each case.

A bill in equity alleged that on the 24th September, 1883, letters of administration upon the estate of a deceased person were granted to one of his creditors whose several debts were secured by mortgages upon the estate of which he died seized; that on the 28th day of the same month, the administrator, though having in his possession money sufficient to discharge those claims, proceeded to foreclose the mortgages, and did on the 16th of the next October take judgment in his individual name against himself as administrator for the amount of the claims and for attorney's fees, and in the following December caused the various parcels to be sold; that the property brought much less than its real value, or than it would have brought at an open sale; that one of the tracts was bought by the administrator and assigned by him to the judge by whom the decree was rendered; that the wife of the deceased survived him; that all the property was acquired during marriage and was common property of the husband and wife, and, at the decease of the husband, descended to the wife; and that on the 20th of June, 1887, she conveyed her rights to the plaintiff. The bill which was filed July 18, 1887, made the several purchasers, the administrator, and the judge who rendered the decree, defendants, and asked to have the decree of sale and the sales thereunder set aside, and for further relief. To this complaint the defendants demurred, and the demurrer was sustained. *Held*, that the circumstances set forth in the complaint were of so peculiar a character, that a court of equity should be slow in denying relief upon the mere ground of laches in bringing the suit.

THE court stated the case as follows:

This suit was brought by the appellant on the 18th of July, 1887, in the District Court of the Second Judicial District of Arizona, and was there heard upon demurrer to the complaint. The demurrer was sustained, and the plaintiff refusing to amend, the suit was dismissed. That judgment having been affirmed by the Supreme Court of the Territory, the only question is whether the facts alleged in the complaint —

assuming, as we must, that they are true — set forth a cause of action entitling the plaintiff to relief.

The case made by the complaint is as follows : Jonathan M. Bryan was the owner at the time of his death on the 29th of August, 1883, (1) of the southeast quarter section number thirty-three, in township two north, of range three east, of the district of lands subject to sale at the land office of the United States at Tucson, Arizona, and of the Gila and Salt River Meridian; (2) the northeast quarter of section five, in township one north, of range three east, of the same district and meridian, and lying one-half mile north of the city of Phœnix, in Maricopa County, Arizona, such piece of land being once called the " Shortle ranch," but now commonly known as "Central Place;" (3) the southeast quarter of section nine, in township one north, of range three east, of the same meridian and district ; and (4) all of block ninety-eight in the city of Phœnix, according to a map or plat of that city, made by William A.. Hancock, surveyor of the town site of such city, and on file in the office of the county recorder of Maricopa County.

On or about the 24th of September, 1883, letters of administration upon his estate were issued by the probate court of Maricopa County to M. W. Kales, who immediately qualified and entered upon his duties as administrator, continuing to be and to act as such until December 6, 1884, when he was discharged. Since that date there has been no administrator of the decedent's estate.

While Bryan was the owner and in possession of the above-described real estate, he executed to Kales, four promissory notes for the amounts, respectively, of $1200, $2500, $1500 and $500, dated December 11, 1882, February 23, 1883, February 26, 1883, and March 14, 1883, and payable, respectively, December 11, 1883, February 23, 1884, October 26, 1883, and September 14, 1883, — each note calling for interest payable every three months, at the rate of one and a half per cent per month, and, if not so paid, the note to become due and payable. At the date of each note he executed, acknowledged and delivered to Kales a mortgage upon real estate to

secure its payment; upon the first of the above-described pieces of real estate, to secure the note for $1200; upon the second, to secure the note for $2500; upon the third, to secure the note for $1500; and upon the fourth, to secure the note for $500. These mortgages were all duly recorded.

Before the notes fell due, and before they were presented for allowance against the estate of Bryan, in the probate court having jurisdiction thereof, and without application to any court for an order to pay the notes or any of them, or to sell any property of the estate to pay them, and " while holding in his hands as administrator sufficient money to pay all the principal and interest which might become due on said notes or any of them," Kales on the 28th of September, 1883, instituted, in the District Court of the Second Judicial District of Arizona, in and for Maricopa County, in his individual name, an action against himself as administrator. He declared, in that action, upon the notes and mortgages, and prayed judgment against himself as administrator for the sum of fifty-seven hundred dollars, with interest on twelve hundred dollars of [that] sum from the 11th day of June, 1883, on twenty-five hundred dollars from the 23d day of May, 1883, on fifteen hundred dollars from the 26th day of May, 1883, and on five hundred dollars from June 14, 1883, the interest on each sum to be at the rate of one and a half per cent per month; with a like rate of interest upon the principal sum named in any judgment or decree that may be obtained from the date thereof until the same shall be fully paid and satisfied; and for ten per cent for attorneys' fees upon forty-two hundred dollars of the principal sum, and five per cent for attorneys' fees upon twenty-five hundred dollars of the principal sum, and for costs of suit.

He also prayed that the usual decree be made for the sale of the premises by the sheriff according to law and the practice of the court; that the proceeds of sale be applied in payment of the amount due the plaintiff; that the defendant and all persons claiming under him or his decedent subsequent to the execution of the mortgages upon the premises, either as purchasers, incumbrancers, or otherwise, be barred and

foreclosed of all right, claim, or equity of redemption in the premises and every part thereof, and that the plaintiff have judgment against the defendant, as administrator of the estate of J. M. Bryan, deceased for any deficiency remaining after applying the proceeds of the sale of the premises properly applicable to the satisfaction of the judgment, and that such deficiency be made a claim against the estate of the said J. M. Bryan, deceased, to be paid as other claims against said estate.

He further prayed that the plaintiff or any other party to the suit might become a purchaser at the sale; that the sheriff execute a deed to the purchaser; that the latter be let into the possession of the premises on production of the sheriff's deed therefor; and that the plaintiff have such other or further relief in the premises as to the court seemed meet and equitable.

A summons was sued out by M. W. Kales as an individual against himself as administrator, requiring the latter to appear and answer the complaint. It was personally served on the day it was issued, and, on the succeeding day, October 6, 1883, in his capacity as administrator, he made the following answer to the complaint filed by himself in his individual capacity:

"The defendant, M. W. Kales, administrator of the estate of J. M. Bryan, deceased, answering the complaint on file in this action, admits each and every material allegation in the said complaint, and consents that judgment and decree be entered in accordance with the prayer thereof."

In other words, M. W. Kales consented that he might as an individual take judgment against himself as administrator.

On the 16th of October, 1883, the court, D. H. Pinney being the judge thereof, rendered a decree of foreclosure and sale, finding, upon the complaint, answer and proofs heard, that there was due to the plaintiff, M. W. Kales, from the defendant, M. W. Kales, administrator, the sums, with interest, specified in the several mortgages, with the attorney's fee provided for in the mortgages and claimed in the complaint, and directing the proceeds of the sale of each parcel to be applied to the debt secured by the mortgage on that parcel.

The decree further provided:

"That the defendant, M. W. Kales, as administrator as aforesaid, and all persons claiming or to claim from or under him or from or under the said J. M. Bryan, deceased, and all persons having liens subsequent to said mortgages by judgment, decree, or otherwise upon the lands described in said mortgages or either of them, and they or their personal representatives, and all persons having any lien or claim by or under such subsequent judgment or decree, and their personal representatives, and all persons claiming under them, be forever barred and foreclosed of and from all equity of redemption and claim in, of, and to said mortgaged premises and every part and parcel thereof from and after the delivery of said sheriff's deed.

*     *     *     *     *

"And it is further adjudged and decreed that if the moneys arising from said sale of any of the separate parcels of said lands described in either of the respective mortgages shall be insufficient to pay the amount so found due to the plaintiff, as above stated, upon each of the respective mortgages, with interests and costs and expenses of sale as aforesaid, the sheriff specify the amount of such deficiency and balance due the plaintiff upon each of the respective mortgages separately in his return of sale, and that on the coming in and filing of said returns of deficiency the same shall become a claim against the estate of J. M. Bryan deceased, to be paid as other claims are paid."

The remainder of the decree contains a description of the property or parcels of land covered by the respective mortgages.

On the 8th of November, 1883, the District Court made an order commanding the sheriff to sell upon notice all the property described in the mortgages, and make return thereof. Pursuant to that order, the sheriff, L. H. Orme, advertised, and on the 15th of December, 1883, sold, the property in parcels, as follows: The first parcel to Robert Garside for $1500; the second to M. W. Kales for $2975; the third to William Gilson for $1850; and the fourth to M. W. Kales for

$600. The amount bid for each parcel was much less than such parcel was worth in open market, or than it would have brought at the usual sheriff's sale. The sheriff delivered to each purchaser a certificate of sale. He made his return of sales on the 26th of December, 1883, but the sales have never been confirmed by the District Court.

After the sales and before the making of any deeds, Kales assigned to J. T. Simms the certificate of sale for the second parcel, and to D. H. Pinney the certificate of sale for the fourth parcel. On the 16th of June, 1884, the sheriff executed a deed for the first parcel to Garside, who, by deed of May 20, 1887, sold and conveyed to J. DeBarth Shorb. Simms, having received from the sheriff, June 10, 1884, a deed for the second parcel, sold and conveyed, by deed of February 28, 1887, to George T. Brasius, who subdivided it into blocks and lots as " Central Place ;" and, subsequently, May 3, 1887, sold and conveyed one lot to John W. Jeffries, and, May 5, 1887, another lot to Henry W. Ryder. Gilson received a sheriff's deed for the third parcel, June 19, 1884, and, April 6, 1886, sold and conveyed to Cordelia L. Beckett, wife of C. G. Beckett. The fourth parcel was conveyed by the sheriff, June 16, 1884, to D. H. Pinney, who, September 10, 1886, sold and conveyed a portion thereof to the Bank of Napa, a corporation existing under the laws of California. Another portion of the fourth parcel was conveyed by Pinney, November 18, 1886, to F. Q. Story, who sold and conveyed to M. H. Sherman.

Bryan left no descendants. His wife, Vina Bryan, survived him. All the property in question was acquired by him during marriage, and, at the time of his death, — the complaint alleges, — was the common property of himself and wife, and, upon his death, she became and was his sole heir, and to her all of the common property descended, and in her remained until June 29, 1887, when, by deeds of conveyance, she granted, released and conveyed to the present plaintiff all of these lands, together with all her estate, right, interest and claim in the same and every part thereof.

The complaint makes all of the persons hereinbefore named

as having purchased at sheriff's sale or received conveyances for these parcels of land defendants to this suit. It alleges that of "all the facts herein alleged, the defendants and each of them, at all the times herein mentioned, had full notice; that the defendant, D. H. Pinney, was the judge of the said District Court, and acted as such in all the proceedings had in the said action, wherein said defendant, M. W. Kales, was plaintiff, and said M. W. Kales, as administrator of the estate of J. M. Bryan, deceased, was defendant; and said defendant, D. H. Pinney, rendered and made the said decree of foreclosure and order of sale therein and was so the judge of said District Court at the time of the assignment to him by said defendant, M. W. Kales, of the sheriff's certificate of sale of said block number 98, in said city of Phœnix, and also at the time of the execution and delivery to him by the said sheriff of the said sheriff's deed thereof."

The plaintiff, after alleging that the premises described in the complaint are of the value of $125,000, prayed:

That the proceedings, judgment, decree and order of sale had, made, rendered or entered in the action brought by Kales be annulled, set aside, and declared void;

That the sale of the property, and the certificate of sale and deeds made to Kales, Garside, Gilson, Pinney and Simms be set aside and declared void, and the parts and portions of the property conveyed to the several defendants be decreed to have been received by them. and each of them with notice and in trust for Vina Bryan and her grantee, the plaintiff herein;

That the defendants and each of them, now pretending to claim or own the above property or any part thereof, be decreed to hold the same and each part claimed by them in trust for the plaintiff, and required to convey to him upon his doing whatever the court adjudged should be equitably done by him;

That the defendants and each of them be enjoined from selling, conveying, mortgaging or in any way interfering with the premises; and

That the plaintiff have such other and further relief as may be just and equitable.

*Mr. William A. McKenney,* for appellant, on the question of laches, cited : *Moss* v: *Berry,* 53 Texas, 632 ; *Railroad Co.* v. *Dubois,* 12 Wall. 47 ; *Lux* v. *Haggin,* 69 California, 255 ; *Stockman* v. *Riverside Land &c. Co.,* 64 California, 57 ; *Kelly* v. *Hurt,* 61 Missouri, 463 ; *Fielding & Gwynn* v. *DuBose,* 63 Texas, 631 ; *Hill* v. *Epley,* 31 Penn. St. 331 ; *Knouff* v. *Thompson,* 16 Penn. St. 357 ; *Bales* v. *Perry,* 51 Missouri, 449 ; *Strong* v. *Ellsworth,* 26 Vermont, 366 ; *Sulphine* v. *Dunbar,* 55 Mississippi, 255 ; *Rice* v. *Dewey,* 54 Barb. 455 ; *Mayo* v. *Cartwright,* 30 Arkansas, 407 ; *Neal* v. *Gregory,* 19 Florida, 356 ; *Bramble* v. *Kingsbury,* 39 Arkansas, 131 ; *Terre Haute &c. Railroad* v. *Rodel,* 89 Indiana, 128 ; *Viele* v. *Judson,* 82 N. Y. 32; *Diffenback* v. *Vogeler,* 61 Maryland, 370 ; *Meley* v. *Collins,* 41 California, 663.

*Mr. William Pinckney Whyte* and *Mr. Clark Churchill,* for appellees, cited to the same point: *Harwood* v. *Railroad Co.,* 17 Wall. 78 ; *Diefendorf* v. *House,* 9 How. Pr. 243 ; *The Key City,* 14 Wall. 653 ; *Badger* v. *Badger,* 2 Wall. 87 ; *Speidel* v. *Henrici,* 120 U. S. 377 ; *Richards* v. *Mackall,* 124 U. S. 189 ; *Smith* v. *Clay,* 3 Bro. Ch. 639 n.; *Piatt* v. *Vattier,* 9 Pet. 405 ; *McKnight* v. *Taylor,* 1 How. 161 ; *Wagner* v. *Baird,* 7 How. 234 ; *Hume* v. *Beale,* 17 Wall. 336 ; *Marsh* v. *Whitmore,* 21 Wall. 178 ; *Sullivan* v. *Portland & Kennebec Railroad,* 94 U. S. 806 ; *Godden* v. *Kimmel,* 99 U. S. 201.

MR. JUSTICE HARLAN, having stated the facts as above reported, delivered the opinion of the court.

The grounds upon which the District Court sustained the demurrer to the complaint are not shown by the record otherwise than from the statement in the opinion of the Supreme Court of the Territory that it was because of laches in bringing suit. The latter court said : " It appears that the grantor of the plaintiff stood by and saw all this property sold, and had a right to redeem the same in six months after the sale; that her residence was Maricopa County at the death of her

husband, and its continuance will be presumed to be there, the contrary not having been alleged; that there was no action brought to set aside the judgment; that from the 8th day of November, 1883, till the [2] 9th day of June, 1887 — nearly four years — she saw the property greatly enhancing in value, saw it sold time and again, then sells it to the plaintiff, who now comes into a court of equity and asks a cancellation of all those sales. If the bill had shown, and which plaintiff was allowed to show, that any disability existed on the part of any one having an interest in the property at the time of sale, we would grant the prayer of the bill. No such disability being shown, can we think of allowing the party who has so long slept upon her rights to divest the present owners of their valuable property?"

The difficulty with this view is that it has no foundation in the allegations of the complaint. From the mere fact that Mrs. Bryan's residence at the time of her husband's death was in Maricopa County, where the real estate in question is situated, the court below presumed not only that it continued there, but that she "stood by" for nearly four years, forbearing to exercise her right to redeem, and "saw the property enhancing in value — saw it sold time and again" — without asserting any interest in it. No such presumption was justified by the allegations of the complaint. The case made by those allegations is that of an administrator, who, having claims against the estate he represented, which were secured by mortgage upon real property of which his intestate died seized, and having in his hands money sufficient to discharge those claims, yet resorted to the expedient of taking judgment in his individual name against himself in his fiduciary capacity, for the amount of the claims and for attorneys' fees, and caused the property to be sold. And of all those facts — the demurrer admits — the defendants and each of them had full notice when they made their respective purchases. Referring to the allegation in the complaint, that the administrator, at the time he sued himself, had in his hands sufficient money to pay off his claims, the counsel for the defendants suggest that this might well be, if those moneys had been applied to the

debts in question without providing for the payment of other debts against the estate, the expenses of administration, or preferred claims; and that for aught appearing in the complaint, it may have been the duty of the administrator to apply the moneys in his hands to other debts and claims. A sufficient answer to this suggestion is, that the allegation in the complaint upon this point imports a failure of the administrator to use the moneys in his hands to discharge the debts held by him, when he could properly have so used them.

It is true, as contended, that where the bill shows such laches upon the part of the plaintiff that a court of equity ought not to give relief, the defendant need not interpose a plea or answer, but may demur upon the ground of want of equity apparent on the bill itself. *Lansdale* v. *Smith,* 106 U. S. 391, 393; *Speidel* v. *Henrici,* 120 U. S. 377, 387. But no such case is made by the bill. The limitation prescribed by the statutes of Arizona for the commencement of an action to recover real property, or the possession thereof, is five years. If this statute governs courts of equity as well as courts of law — and such is the plaintiff's contention — the present action is not barred by limitation. If, as contended by the defendants, a court of equity may deny relief because of laches in suing, although the plaintiff commenced his action within the period limited by the statute for actions at law, still the granting or refusing relief, upon that ground, must depend upon the special circumstances of each case. *Harwood* v. *Railroad Co.,* 17 Wall. 78; *Brown* v. *County of Buena Vista,* 95 U. S. 157, 160; *Haywood* v. *National Bank,* 96 U. S. 611, 617. The case made by the complaint in this suit is one of fraud upon the part of the administrator, and in that fraud — if the allegations of the complaint are sustained by proof — the defendants and each of them must be held to have participated. The circumstances as detailed in the complaint are so peculiar in their character, that a court of equity should be slow in denying relief upon the mere ground of laches in bringing suit.

Other questions arise upon the face of the complaint, namely, as to whether Mrs. Bryan had such interest in the property as made her a necessary party to the suit of foreclosure

instituted by Kales in his individual capacity, and as to how far the validity of the decree of foreclosure and sale was affected by the very unusual fact that the same person was both plaintiff and defendant in that suit. *Perkins* v. *Se Ipsam*, 11 R. I. 270 ; *McElhanon* v. *McElhanon*, 63 Illinois, 457 ; *Hoag* v. *Hoag*, 55 N. H. 172. But as these questions were not considered by the court below, and as their correct determination can be best made when all the facts are disclosed, we express at this time no opinion upon them, and place our decision upon the ground that the Supreme Court of the Territory erred in holding that the complaint failed to show that the plaintiff was entitled to relief from a court of equity. The defendants should be required to meet the case upon its merits.

> *The decree is reversed with directions that the demurrer to the complaint be overruled, and for further proceedings consistent with this opinion.*

FIELD, J. — I concur in the judgment of this court for the reasons stated ; but I wish to add that in my opinion the judgment recovered by Kales against himself as administrator is an absolute nullity.