[L. A. No. 1353.   Department One.—March 10, 1904.]

## MILLER & LUX, Appellant, v. J. B. BATZ, Treasurer of Kern County, Respondent.

SWAMP LAND—RECLAMATION—PURCHASER'S SHARE OF FUND—MANDA-
MUS—DEMAND—STATUTE OF LIMITATIONS.—The right of the owner
of reclaimed swamp land to a share of the swamp-land fund aris-
ing from the payment of purchase money for swamp lands into the
county treasury is based upon contract with the state, and does
not arise until demand is duly made therefor; and the statute of
limitations does not begin to run against a *mandamus* to compel
payment of such share until the payment is actually demanded.

ID.—TRUST FOR PURCHASER.—The swamp land granted to the state by
the general government was by its nature and object a trust for
reclamation; and under the state laws both the land and money
are held by the state in trust for the purchaser until the statutory
conditions have been fulfilled by him entitling him to a patent and
to his share of the swamp-land fund payable upon demand to the
purchaser or his assigns.

APPEAL from a judgment of the Superior Court of Kern
County.   J. W. Mahon, Judge.

The facts are stated in the opinion.

Joseph R. Garber, for Appellant.

J. W. Ahern, and J. R. Dorsey, for Respondent.

CHIPMAN, C.—*Mandamus.* The principal question raised
is on plea of the statute of limitations raised by the de-
murrer.   It does not appear by the transcript when the ori-
ginal petition for the writ was filed, but the respondent states
that it was on January 6, 1898, and we will assume that to be
the date.   The demurrer was sustained, and defendant had
judgment, from which plaintiff appealed.   The purpose of the
writ was to compel defendant to pay the plaintiff certain
moneys alleged to be due plaintiff out of the swamp-land
fund held by defendant.

It appears that the amount paid into the treasury of Kern
County by plaintiff's predecessors and assignors on account
of the purchase price of the land in swamp-land district No.

457 as originally defined was $1,931.38, and the amount paid
on account of the purchase price of land in the annexation
was $414.37. More than two dollars per acre was expended
by plaintiff and its assignors in the reclamation of the land
in the original district, and the fact was duly certified by
the trustees of the district, as provided by section 3476 of the
Political Code, and was also so certified to the register of the
state land office on March 9, 1891, and on March 11, 1891,
agreeably to section 3477 of the same code, the register for-
warded to the treasurer of Kern County a statement that the
amount paid by the purchaser was as above shown. Similar
expenditures, to the amount of $414.33, were made in re-
claiming the land in the annexation, and were duly certified
by the trustees of the district April 4, 1893, and were certified
back by the register to the treasurer of the county on April
14, 1893. There was no amount at any time chargeable
against the district or its annexation by reason of moneys
drawn from the swamp-land fund, nor had the district ever
had any indebtedness represented by controller's warrants
drawn on the state treasury.

Under section 3477 of the Political Code the right accrued
to demand the sum of $1,931.38 out of the swamp-land fund
of the county at least as early as March 11, 1891, and the sum
of $414.37 on April 14, 1893. It is alleged, however, that
from March 10, 1891, to and including December 28, 1897,
the total amount of money in the swamp-land fund of said
county was less than $1,894. On December 28, 1897, payment
was demanded of the several sums due, "or as much thereof
as there remained in the swamp-land fund, which demand
was refused." At this time the amount in the fund was
$1,098.09.

The alleged insufficiency of the facts to constitute a cause
of action is not urged by respondent, nor is the question as to
an alleged defect of parties defendant; these points will be
deemed waived. Respondent rests upon the claim that the
action is barred by the statute of limitations. The cause was
here once before (*Miller & Lux* v. *Batz,* 131 Cal. 402), and
the only statute then pleaded in bar was subdivision 1 of
section 338 of the Code of Civil Procedure, the theory of
defendant then being that the action was upon a liability
created by statute other than a penalty or forfeiture. The

court said: "The plaintiff's cause of action herein is not founded upon a liability created by statute, but is based upon a contract between him and the state, and is subject only to those provisions of the statute of limitations which are applicable to causes of action arising out of contractual relations." No other statute being pleaded, the cause was remanded on rehearing, with leave to plaintiff to amend so as to obviate the objection pointed out in the Department decision affirming the judgment. (61 Pac. Rep. 935.) The statute requires the county treasurer to retain all moneys arising from the sale of swamp or overflowed lands, and place the same to the credit of the "swamp-land fund" of the county. (Pol. Code, sec. 3426.) The statute also provides that when the works of reclamation are completed, or when two dollars per acre has been expended on such works, and the facts are certified to the board of supervisors, the latter must certify the facts to the register (Pol. Code, sec. 3476), and the register must thereupon credit each purchaser with payment in full for such lands who is then entitled to patent. The register must also make a statement to the county treasurer showing the amount paid by each purchaser. After making certain deductions chargeable against the swamp-land fund of the county by reason of moneys drawn therefrom, the county treasurer "must divide the balance *pro rata* among the original purchasers of the land or their assigns, and must pay to each purchaser on demand the amount found to be due from such computation, out of the moneys in his hands to the credit of the swamp-land fund of the county." In the present case there were no amounts chargeable against the fund, and the whole amount paid as above stated was due plaintiff out of this fund. Except to meet demands on the fund provided by statute (and there were none in this case), there is no authority given to use the fund for any purpose, except upon a transfer to the general county fund by way of loan (Stats. 1880, p. 399); and when necessary to repay the amount so loaned, the act authorized warrants to be drawn upon the general county fund for the amount so loaned, or any part thereof, and such claims become preferred claims against that fund, to be paid out of the first moneys received in such fund.

According to the petition, there was about $1,894 in the swamp-land fund from the time plaintiff could have demanded the money up to the time (December 28, 1897,) when the demand was made, and there was $1,098.09 when the petition was filed. The balance of the money standing to the purchaser's credit must be presumed to have been in the general fund by transfer, as there was no authority to make other disposition of it (Code Civ. Proc., sec. 1963, subd. 15), and on demand it became the duty of the board of supervisors to retransfer the money to the swamp-land fund or issue warrants against the general fund, as provided by the act of 1880. (Stats. 1880, p. 399.)

Appellant contends that the treasurer holds the money as trustee of an express trust, and therefore the statute did not begin to run until appellant's demand was made, and until the trust is expressly repudiated the statute does not run; that the money is held in trust as is the land, and the purchaser may demand either at his pleasure. It is also claimed that if the treasurer is not the trustee of an express trust the demand was made within a reasonable time after the right accrued, and nothing more was required.

The question then is, Was the statute of limitations set in motion at the time when plaintiff or its assignors had the right to demand payment? We think the answer must be in the negative.

The original grant of swamp and overflowed land by the general government to the state was by its nature and object a trust to bring about the reclamation of the land, although title to the land passed to the state. In its disposition by the state to purchasers reclamation was contemplated,—hence the machinery for organizing reclamation districts; the creation of a swamp-land fund, of which the money paid by the purchaser was a part; the provisions for carrying on the work of reclamation by trustees, or by the purchasers themselves out of this fund, and for the repayment to the purchasers the unexpended purchase money on completion of the reclamation or the expenditure of two dollars per acre for that purpose. The history and object of the grant and the successive state enactments will be found quite fully set forth in the *County of Kings* v. *County of Tulare,* 119 Cal. 509. It was there held that the officers of the county, so far as called upon

to execute the law, were but agents of the state, and had no property right in the fund or in the land. The fund was placed in the county treasury merely to facilitate the purpose of the grant to the state, which was to cause the land to be reclaimed, and that the state had not transferred its trust. Upon proof made of complete reclamation to the register of the state land office, or to the expenditure of two dollars per acre therefor, the purchaser became entitled to a patent; and it became the duty of the register to certify to the county treasurer the amount paid by each purchaser; and the county treasurer was then required, after making computation of charges against the fund to "pay to each purchaser, or his assigns, on demand, the amount found to be due him from such computation out of the moneys in his hands to the credit of the 'swamp-land fund' of the county." (Pol. Code, sec. 3477.) Under the provisions of the law the purchaser acquires an equitable interest in the land by the deposit of his purchase money, and likewise a similar interest in the swamp-land fund, where his money is deposited, upon doing the reclamation work, and it seems to us that the land and money are both held by the state in trust for the purchaser.

This swamp-land fund is a special fund, separate from all other funds of the state or county which became vested in the state upon payment by the purchaser. The state agreed, however, on certain conditions, not only to convey the title to the land to the purchaser, but to restore to him the purchase money in the event of his reclaiming the land. It was not the purpose of the law that the state should profit pecuniarily by the transaction. The main object was to cause the land to be reclaimed, and to bring otherwise profitless land under cultivation and make it productive and habitable. The state could retain the money only upon failure of the purchaser to do what the law required of him, which, when done, entitled him not only to a patent to the land, but a return of the money paid whenever he might apply for it.

An act of Congress imposed a direct tax upon certain property, and provided that in case of sale the surplus of the proceeds "shall be paid to the owner of the property," and if not paid "shall be deposited in the treasury of the United States, to be there held for the use of the owner, or his legal

representative, until he or they shall make application there-for to the secretary of the treasury, who, upon such application, shall, by warrant on the treasury, cause the same to be paid to the applicant.'' Suit was brought in the Court of Claims, and the bar of the statute of limitations was pleaded. The court held that the law imposing the tax fixed no limit of time within which the application should be made, and the secretary was not authorized to fix a limit; that the government held the money as trustee, and that the statute did not begin to run against the *cestui que trust* until the trustee had unequivocally repudiated the trust. (*United States* v. *Taylor,* 104 U. S. 216.)

A gas company contracted with the municipality to furnish gas to the city, ''and was to be paid ten cents on the $100, the tax levied for lighting purposes, whenever said taxes were collected.'' In a suit by the company the city pleaded the statute of limitations. It was held that the tax was levied for a specific purpose in pursuance of a lawful contract made by the city, and the gas company became the equitable owner of those taxes. The charter made it the duty of the commissioners of the taxing district to disburse taxes for the purpose for which they were levied, and a creditor could look only to the particular tax levied. The court said: ''We are, therefore, of the opinion that, in view of the provisions of this charter, the commissioners are made express trustees of those taxes. The board of commissioners constitutes an agency or instrumentality of the taxing district, and the plea of the statute of limitations is unavailing as a defense to the city.'' (*Memphis Gas Light Co.* v. *Memphis,* 93 Tenn. 612.)

A statute of Maine provided for equalizing the burden of war debts of the towns in the state by a limited assumption on the part of the state. It was provided that where, in the process of equalizing bounties, a town had received a surplus over what it had expended, this surplus should belong to the soldiers who served on the town's quota without receiving any bounty therefrom. The court held that this legislation constituted an express trust, and the statute of limitations did not begin to run in favor of the town until disavowed by it; that mere delay on the part of the soldier in demanding payment, after his share became payable, did not bar his right of recovery. (*McGuire* v. *Linnens,* 74 Me. 344.)

The controlling principle of these cases appears applicable to the case now here, and warrants us in holding that the statute of limitations does not stand in the way of paying the plaintiff's claim.

We find nothing in what was said in the case when here before, nor in *Carpenter* v. *San Francisco Savings Union*, 128 Cal. 516, contrary to this view. In the latter case no question arose as to the statute of limitations.

It is advised that the judgment be reversed, with directions to overrule the demurrer.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to overrule the demurrer.

Angellotti, J., Shaw, J., Van Dyke, J.