[Civ. No. 936.   First Appellate District.—September 19, 1912.]

CHARLES S. MacMULLAN, Appellant, v. MICHAEL J. KELLY, Treasurer of the County of Alameda, Respondent.

TAXATION — EXCESS OF PERSONAL TAXES COLLECTED — MANDAMUS TO TREASURER — DEMURRER SUSTAINED — SEVERAL GROUNDS INCLUDING STATUTE OF LIMITATIONS.—Upon a petition for a writ of mandate to a county treasurer to compel the payment of an excess of personal property taxes collected about eight years before the filing of the petition, where a general demurrer to the petition for the writ was sustained on other grounds, as well as upon the assigned ground, that the proceeding is barred by the statute, without leave to amend, if it appears that the proceeding is not so barred, yet if the demurrer is sustainable on any other ground assigned, the judgment must be affirmed; but if otherwise, it must be reversed.

ID.—FUND OF EXCESSIVE PERSONAL PROPERTY TAXES — EXPRESS CONTINUING TRUST—RUNNING OF STATUTE OF LIMITATIONS—KNOWLEDGE OF REPUDIATION ESSENTIAL.—The fund of excessive taxes on personal property accumulated in a county treasury under the sections of the Political Code relating to the collection and payment of such unsecured taxes constitutes an express continuing trust, against which the statute of limitations does not begin to run until such trust, with the knowledge or on demand of the taxpayer, has been repudiated.

ID.—INTENT OF LEGISLATURE TO CREATE DEFINED TRUST.—The legislative intent to create a trust, as defined in section 852 of the Civil Code, and to express the subject matter, purpose and beneficiary of the trust, as therein required, is clearly indicated by the terms of section

3824 of the Political Code, empowering assessors to collect personal property taxes on the basis of the last year's levy, and the other provisions of the Political Code relating to the collection of personal property taxes, which clearly create an express trust as to any excess, which continues until the individual amounts which go to make up the accumulated trust fund of excess taxes are called for by the taxpayers or their assigns.

Id.—General Rule as to Express Trust—Running of Statute.—It is a general rule, applicable to all cases of express trust, that the statute of limitations does not begin to run in favor of a defendant chargeable as a trustee during the life of the trust; but that it must be unequivocally repudiated, and such repudiation brought to the knowledge of the beneficiary, before the statute of limitations can be set in motion against him.

Id.—Construction of Code—Duty of Successive County Treasurers to Account for Excessive Taxes.—Section 3824 of the Political Code clearly contemplates that each successive county treasurer shall account for any fund of excess of taxes which may be accumulated in the county treasury, and reported as a continuing fund, which is subject solely to the demands of the owners thereof. Each treasurer is but a bailee, holding the money subject to the demands of the rightful owners.

Id.—Proceeding in Mandamus—Laches—Limitations.—The question of laches, as applied to a proceeding in *mandamus,* as contradistinguished from the lapse of the period required for the running of the statute of limitations, is confined to cases where the beneficiary has either by his actions waived the trust, or has by his neglect placed the trustee or other persons dealing with the trustee in a position so unfavorable and unreasonable as to render an enforcement of the trust unjust or inequitable. It is held that under the facts here appearing, no question of mere laches applies, and the proper question is as to the statute of limitations.

Id.—Petition for Mandamus to Treasurer—Allegation of Entry of Taxes by Auditor not Required.—In a *mandamus* proceeding against the county treasurer to compel the payment of excessive taxes in his hands, it is not required to allege the fact that the auditor had actually entered in the "assessment-books" the alleged excessive taxes as required by section 3828 of the Political Code. The requirements of sections 3827 and 3828 of the Political Code were not intended for the information and guidance of the county treasurer in refunding excessive taxes, but are prescribed primarily as a matter of bookkeeping, and secondarily for the information and protection of the taxpayer.

Id.—Warrants for Distribution of County Moneys Inapplicable to Excessive Taxes.—The provisions of the Political Code prohibiting county treasurers from distributing moneys from the county

treasury except upon county warrants issued by the auditor only
applies to moneys owned by the county. But the county has no
title to excessive taxes held in the treasury, which belong only to
the taxpayers from whom they were received, or their assigns, and
no auditor's warrant is requisite to a refunding of the same.

APPEAL from a judgment of the Superior Court of Alameda County.    William H. Waste, Judge.

The facts are stated in the opinion of the court.

Brewton A. Hayne, for Appellant.

Wm. H. Donohue, District Attorney of Alameda County,
and W. H. L. Hynes, Assistant District Attorney, for Respondent.

LENNON, P. J.—In this proceeding the petitioner sought
by *mandamus* to compel the respondent, in his official capacity
as treasurer of the county of Alameda, to pay to the petitioner
upon assigned claims several amounts of money totaling the
sum of $42.09, which it was alleged had been by petitioner's
assignors paid to the then assessor of Alameda county as taxes
on unsecured personal property for the fiscal year 1902–3.
The petition alleges that the several sums sued for and paid
as taxes for that year were collected by the assessor in accordance with the provisions of chapter 8 of the Political Code,
upon the basis of the rate of taxation fixed for the preceding
year, and that in each instance the several sums so paid were
in excess of the amounts which subsequently actually became
due for such taxes, based upon the rate of taxation which was
finally fixed by the proper authorities for that year.    The
petition further alleges that the several sums sued for were by
the assessor paid into the county treasury of Alameda county,
where they now remain in charge of, and in the possession of,
the respondent as treasurer of said county.

The petition for a writ of mandate was not filed in the superior court of Alameda county until February 7, 1910; and
it affirmatively appears from the allegations thereof that no
demand for the return of the money paid as taxes in excess
of the amount required by the rate of taxation for the fiscal
year 1902–3 was made upon the treasurer of Alameda county
until January 19, 1910.

Respondent interposed a demurrer to the petition for a writ of mandate which, among other grounds thereof, specified (1) that the petition did not state facts sufficient to entitle the petitioner to the relief prayed for; (2) that the petition was uncertain in this, that it was not alleged therein that the auditor of Alameda county, as required by the provisions of section 3828 of the Political Code, had entered on his books the alleged excess of taxes sued for and which it was alleged had been paid into the county treasury; that it was not alleged in the petition that the books of the county auditor showed that any excess tax was due to the petitioner; and (3) that the proceeding was barred by the provisions of section 338 (subdivision 1) and section 343 of the Code of Civil Procedure.

The demurrer was sustained with leave to amend. Petitioner declined to amend, and judgment was rendered and entered accordingly for the respondent, from which the petitioner has appealed upon the judgment-roll.

Upon the first hearing of this case in this court the question as to whether or not the proceeding was barred by the statute of limitations was the only one considered and determined. The demurrer, however, as has been noted, was based upon several grounds other than the statute of limitations. The order of the lower court sustaining the demurrer was general in its terms; and even if it be assumed, as counsel for the petitioner assert, that the trial court erroneously based its ruling solely upon the ground that the proceeding was barred by the statute of limitations, the judgment must nevertheless be affirmed if it can be ascertained, as is contended by respondent, that the demurrer was well taken upon any of the grounds assigned therefor. (*People* v. *Central Pac. Co.,* 76 Cal. 29, [18 Pac. 90]; *Sechrist* v. *Rialto Irr. Dist.,* 129 Cal. 640, [62 Pac. 261].)

We were in error, therefore, in assuming that the correctness of the trial court's ruling upon the question of the statute of limitations was the only point to be considered and decided upon this appeal. Aside from these considerations, we were prompted to grant a rehearing because of the earnest insistence of counsel for the respondent that if further argument of the case could be had, it would be shown beyond the peradventure of a doubt not only that we were in error in holding that the transaction pleaded by petitioner constituted an ex-

press continuing trust, but that the petition was essentially defective in not alleging that the auditor of Alameda county had performed his duty in the premises.

Upon the subject of an express trust no argument was advanced and no authorities were presented at the rehearing of the case which were in any wise different from the argument and authorities originally urged and cited. The reargument of the case has confirmed rather than shaken us in our first conclusion that the fund of excess taxes which may be accumulated in a county treasury by virtue of the provisions of the several sections of the Political Code relating to the collection and payment of unsecured personal property taxes, constitutes an express continuing trust, against which the statute of limitations does not commence to run until the trust, with the knowledge or upon the demand of the taxpayer, has been repudiated. In so far, therefore, as the statute of limitations is concerned, we hold to the opinion first expressed, which, in its pertinent parts, is as follows:

"It is the duty of county assessors to collect taxes on all personal property at the time the assessment is made or at any time before the first Monday of the following month of August, when, in the opinion of the assessor, such taxes will not be sufficiently secured by a lien upon the real property of the taxpayer. The amount of personal property taxes which must be so collected depends upon and must be governed by the rate of taxation on personal property fixed for the previous year in the state and county and the several districts in which the personal property is taxable (Pol. Code, secs. 3820, 3821, 3823) ; and 'When the rate is fixed for the year in which such collection is made then, if a sum in excess of the rate has been collected, such excess shall not be apportioned to the state, but the whole thereof shall remain in the county treasury, and must be repaid by the county treasurer to the person from whom the collection was made, or to his assignee, on demand therefor.' (Pol. Code, sec. 3824.)

"It is the duty of the county auditor to note on the assessment-book, opposite the name of each taxpayer, the amount collected for taxes, and when the rate of taxation for the year has been fixed he must enter opposite the name of each taxpayer the amount of the excess or deficiency, if any, in the tax as collected by the assessor. (Pol. Code, secs. 3827, 3828.)

"It is the contention of petitioner that the fund of excess taxes which may be accumulated in the county treasury, in accordance with the sections of the Political Code herein quoted and referred to, constitutes a continuing trust fund, against which the statute does not commence to run until there has been a demand by the owner for the return of the money, and refusal by the treasurer to pay the same.

"We are of the opinion that this contention is well founded, and that the lower court erred in sustaining the respondent's demurrer upon the ground that the cause of action stated in the petition was barred by the statute of limitations. The purpose and effect of section 3824 of the Political Code, under which county assessors are empowered to collect taxes on personal property in advance of the actual fixing of the rate of taxation for the fiscal year in which such taxes are collectible, have been distinctly defined by our supreme court in the case of *Corbett* v. *Widber,* 123 Cal. 154, [55 Pac. 764]. It was there said, in effect, that the moneys paid into the county treasury in excess of the rate finally fixed did not belong to the county, but in the aggregate constitute a trust fund of which the county is the custodian, and the treasurer but a bailee who holds the moneys so paid subject to the demands of the rightful owners.

"Subject to the provisions of section 852 of the Civil Code, an express trust is created 'as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty (1) an intention on the part of the trustor to create a trust; and (2) the subject, purpose and beneficiary of the trust . . . and as to the trustee, by any acts or words of his indicating with reasonable certainty (1) his acceptance of the trust, or his acknowledgment, made upon a sufficient consideration, of its existence; and (2) the subject, purpose and beneficiary of the trust.' (Civ. Code, secs. 2221, 2222.)

"The legislative intent to create a trust, as well as the subject matter, purpose and beneficiary of the trust, are clearly indicated by the terms of the several sections of the Political Code relating to the collection of personal property taxes; and a trust created thereby is undoubtedly an express trust, which continues in existence until the individual amounts which go to make up the accumulated trust fund of excess taxes are called for by the taxpayers or their assigns. *(Miller & Lux*

19 Cal. App.—45

*v. Batz,* 142 Cal. 447, [76 Pac. 42] ; *McGuire* v. *Inhabitants of Linneus,* 74 Me. 344.)

"It is a rule of law in this and other jurisdictions that the statute of limitations does not begin to run in favor of a defendant chargeable as the trustee of an express trust during the life of the trust. In order to set the statute in motion it is necessary that such a trustee, by some act or declaration, positively and unequivocally repudiate the trust, and that notice of such repudiation be brought home to the beneficiary. This rule is so well settled and so generally recognized that no argument is necessary to support its reiteration here. There is no conflict of authority upon the subject, and of the many cases which have arisen in this jurisdiction where the rule has been declared and applied the following may be cited: *Baker* v. *Joseph,* 16 Cal. 173; *Ord* v. *De la Guerra,* 18 Cal. 67; *Schroeder* v. *Jahns,* 27 Cal. 274; *Miles* v. *Thorne,* 38 Cal. 335, [99 Am. Dec. 384] ; *Hearst* v. *Pujol,* 44 Cal. 230; *Janes* v. *Throckmorton,* 57 Cal. 368; *Zuck* v. *Culp,* 59 Cal. 142; *McClure* v. *Colyear,* 80 Cal. 378, [22 Pac. 175] ; *Roach* v. *Caraffa,* 85 Cal. 436, [25 Pac. 22] ; *Fox* v. *Tay,* 89 Cal. 339, [23 Am. St. Rep. 474, 24 Pac. 855, 26 Pac. 897] ; *Luco* v. *De Toro,* 91 Cal. 405, [18 Pac. 866, 27 Pac. 1082].

"Section 3824 of the Political Code clearly contemplates that each successive county treasurer shall account for the fund of excess taxes which may be accumulated in the county treasury, and report it as a continuing fund, which is subject to depletion solely by the demands of the owners thereof; and as the transaction pleaded by the petitioner in the present case constituted an express trust, which was not repudiated by respondent until demand was made upon him by petitioner for performance of the trust, the statute of limitations commenced to run only from the date of the demand. (*Miller & Lux* v. *Batz,* 142 Cal. 447, [76 Pac. 42].)"

Our opinion in the first instance upon the trust phase of the case was founded largely upon a consideration of the two California cases of *Corbett* v. *Widber,* 123 Cal. 154, [55 Pac. 764], and *Miller & Lux* v. *Batz,* 142 Cal. 447, [76 Pac. 42]. A further consideration of those cases confirms and compels, we think, the conclusion that the plaintiff's complaint states a cause of action for the enforcement of an express continuing

trust, against which the statute of limitations commences to run only from the alleged repudiation thereof.

The case of *Corbett* v. *Widber*, like the present case, was a proceeding in *mandamus* to compel the county treasurer to refund a certain sum of money collected as excess taxes upon unsecured personal property. There, as here, the assessor was directed and empowered by law to collect unsecured personal property taxes in advance upon the basis of the tax rate previously established for the preceding year. Then, as now, it was the law that in the event that the taxes so collected for the current year should exceed the amount of taxes finally determined to be due, the excess "must be repaid by the county treasurer to the person from whom the collection is made or to his assignee on demand therefor" (Pol. Code, secs. 3820, 3824) ; and the supreme court, in construing the transaction and the statute out of which it arose, decided that "The excess moneys so received by the treasurer are no part of the moneys of the . . . county; and if the aggregate of them be denominated a fund, it is in no sense a public fund of the . . . county; it is a trust fund in the custody of the city and under the immediate charge of its treasurer. The treasurer is but a bailee, holding the moneys subject to the demands of the rightful owners."

Although the character of the trust, whether express or implied, was not questioned nor definitely declared in the case of *Corbett* v. *Widber*, 123 Cal. 154, [55 Pac. 764], the reasoning of the case as a whole lends color to the conclusion that the trust created by the several code sections under consideration constitutes an express, continuing trust. However that may be, all doubt as to the nature of such trust is removed, it seems to us, upon a reading of the case of *Miller & Lux* v. *Batz*, 142 Cal. 447, [76 Pac. 42], wherein the petitioner, as the assignee of an original purchaser of swamp lands, sought to compel a county treasurer to *pro-rate* and distribute a certain sum of money which had been paid into the county treasury by the petitioner's predecessors and assignors on account of the purchase of swamp lands under the provisions of a statute which in effect required the county treasurer to receive and retain all moneys arising from the sale of swamp and overflowed lands, and divide the balance thereof remaining, after deducting all amounts chargeable against the district in

which such lands were sold, *pro rata* among the original pur-
chasers or their assignors "on demand." In that case the
principal questions discussed and decided, as in the case at
bar, involved the creation of a trust, either express or implied,
and the applicability of the statute of limitations; and the
supreme court there decided that the county treasurer held the
money in controversy as the trustee of an express trust
against which the statute of limitations did not begin to run
until the demand provided by statute was made, or until the
trust was otherwise repudiated.

The case of *McGuire* v. *Inhabitants of Linneus*, 74 Me. 344,
which was cited and relied upon in part to support the rule
announced in *Miller & Lux* v. *Batz*, 142 Cal. 447, [76 Pac.
42], is strongly in point here and deserves more than a mere
mention.

In that case the plaintiff sought to recover a soldier's share
of a surplus sum created by statute which, in certain contin-
gencies, was to be shared *pro rata* by soldiers who had with-
out previous bounty served upon the defendant's quota.
There the court held that the legislature by statute "created
a trust in the surplus money received by the towns, and the
towns by force of the statute and their vote of appropriation
were constituted trustees, to hold the money for the soldiers
until called for by them. . . . The subject matter and pur-
poses of the trust, as well as the persons to take the beneficial
interest therein, are clearly ascertained. Although the *cestuis
que trust* are not specifically named, they are so described that
they can be ascertained, and the list furnished by the town
to the equalization commissioners must contain their names.
The relation of trustee and *cestui que trust* being shown to
have subsisted between these two parties, the possession of the
money by the town was not adverse to that of its *cestuis que
trust* until a repudiation of the trust . . . evidenced by an
intention to hold it adversely. . . . The only evidence of such
intention is the refusal to perform the demand. . . . Assum-
ing this is a sufficient disavowal of the trust, the statute would
begin to run from that date."

The case of *Zuck* v. *Culp*, 59 Cal. 142, is in principle very
much akin to the case at bar. In that case it was held that
where money had been deposited to be kept until demanded

"the transaction constituted an express trust, and the statute of limitations does not commence to run until demand."

We are unable to perceive how the case at bar in its essential features of law and fact can be exempted from the rule declared and followed in the cases herein cited; and therefore the reasoning of those cases should and must control the decision here in so far as the questions of the creation and character of the trust and the application of the statute of limitations are concerned.

In arriving at the conclusion stated in our original opinion and reiterated here, we were not unmindful of the several cases cited by the respondent in support of his contention that if plaintiff's cause of action was not barred by any statute of limitations, it should at least in a proceeding for *mandamus* be declared stale, because of petitioner's laches in not making a demand for the return of the money within a reasonable time after the right to make a demand had accrued.

The rule in this behalf, as we understand it and as we believe it to be declared in the several authorities cited and relied upon by the respondent, is summed up and succinctly stated in section 87 of Merrill on Mandamus as follows: "The courts require those who would avail themselves of the assistance of this writ to be prompt in the enforcement of their rights. By the lapse of time the necessary evidence is lost, and third parties may acquire rights growing out of the existing state of affairs. Where the parties have been guilty of unreasonable delay in applying for the writ, the courts have not hesitated to refuse such relief unless the delay was accounted for to their satisfaction. In determining what will constitute unreasonable delay, regard should be had to the circumstances that justified the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant or of other persons have been prejudiced by such delay."

This rule, however, cannot be applied to the pleaded facts of the present case without straining to the point of breaking the reason and spirit of the rule. True, it does not appear from the petition for the writ in the present case that there was any good reason why the plaintiff or his assignors should have delayed for several years before making demand for that which was rightfully due; but the necessity for the applica-

tion of the rule under discussion should not be determined solely upon the mere presence or absence of a single requirement of the rule. On the contrary, the rule, in conformity with the spirit and purpose of its creation, should be applied in its entirety; and the necessity of its application should be determined from a consideration of the nature and circumstances of the particular case in which the rule is invoked. (Perry on Trusts, 6th ed., 230; *Bryan* v. *Kales,* 134 U. S. 126, [33 L. Ed. 829, 10 Sup. Ct. Rep. 435] ; *Platt* v. *Platt,* 58 N. Y. 646; *Anderson* v. *Northrop,* 30 Fla. 612, 637, [12 South. 318].)

In applying the doctrine of laches, not only the lapse of time, but the conduct of the parties to the transaction must be considered. Mere lapse of time and delay are matters of minor importance in the consideration of the doctrine of laches as applied to an action for the enforcement of an express trust, save in those cases where it appears that the *cestui que trust* has, in addition to the lapse of time and delay, indicated an intention to waive the trust or, while not waiving the trust, has by his neglect placed the trustee or other persons dealing with the trustee in a position so unfavorable and unreasonable as to render an enforcement of the trust unjust and inequitable. (2 Beach on Trusts, etc., sec. 671, p. 1541; *Rochefoucauld* v. *Boustead* (1897), L. R. 1 Ch. D. 196; *Dusenbery* v. *Bidwell,* 86 Kan. 666, [121 Pac. 1098] ; *Platt* v. *Platt,* 58 N. Y. 646.)

Generally, the defense of laches may be interposed by demurrer where the complaint in any given case shows laches upon the part of the plaintiff sufficient to justify a refusal of the relief sought, and in the absence of such a showing the defense may be made by answer when the facts of the case warrant such a defense. (*Bryan* v. *Kales,* 134 U. S. 126, [33 L. Ed. 829, 10 Sup. Ct. Rep. 433].)

In the present case, however, it does not appear upon the face of the petition, nor is it thus far claimed by the respondent, that the situation of the parties with reference to the fund in suit has been materially changed by the delay in making demand for the performance of the trust, or that such delay has resulted in the loss of material evidence or adversely affected the rights of innocent third parties. If the money in suit was paid into the county treasury, as alleged in the

petition, presumably it is still there, and being there, it must under the law be held by the county treasurer for the tax-payers until demand therefor has been made. (*Corbett* v. *Widber*, 123 Cal. 154, [55 Pac. 764].) Obviously, the petitioner and his assignors were, upon the facts presented by the petition, the only persons who could possibly be injured by not making the statutory demand within a reasonable time after the right thereto accrued.

In brief and in conclusion of this phase of the case, it is our opinion that the statute of limitations and the equitable doctrine of laches operate against the enforcement of an express trust only from the time that the trustee unequivocally assumes a position of hostility to the trust; and that a claim of laches, founded solely upon a mere lapse of time which in itself is not declared by statute to be a bar, and which is unaccompanied by other considerations which would render the enforcement of the trust inequitable, cannot be sustained. (*Rochefoucauld* v. *Boustead* (1897), L. R. 1 Ch. D. 196; *Dyer* v. *Waters*, 46 N. J. Eq. 484, [19 Atl. 129]; *Cooney* v. *Glynn*, 157 Cal. 583, [108 Pac. 506]; *Zuck* v. *Culp*, 59 Cal. 142; *Schroeder* v. *Jahns*, 27 Cal. 274; *Roach* v. *Caraffa*, 85 Cal. 436, [25 Pac. 22]; *Anderson* v. *Northrop*, 30 Fla. 612, [12 South. 318]; Perry on Trusts, 6th ed., sec. 228; Wood on Limitations, sec. 200, p. 461.)

We do not think, as was strenuously contended by counsel for the respondent upon the rehearing of the case, that it was essential to the certainty of the petition or. necessary to petitioner's cause of action to allege the fact that the auditor of the county of Alameda had actually entered in the "assessment-books" the notations required by sections 3827 and 3828 of the Political Code. Nowhere in the several sections of the Political Code relating to the collection and payment of unsecured personal property taxes is there to be found any provision which makes the auditor's entry in the "assessment-book" a prerequisite to the repayment of any excess tax which may be found to be due to a taxpayer. Although the code provides that the "assessment-book" shall from time to time and for various purposes be placed in the custody of different county officers (Pol. Code, secs. 3654, 3682, 3732, 3759), it nowhere provides that the county treasurer shall at any time have the custody of the assessment-book, or that he shall be

required to make reference thereto for the transaction of the business of his office. On the contrary, the county treasurer, independently of anything that may be contained in the assessment-book, is required by section 4101 of the Political Code to receive all moneys by law directed to be paid to him; to apply and pay the same as required by law, and to so keep his books that the amount received by him and paid out on account of separate funds shall be exhibited in separate and distinct accounts. By the provisions of section 4102 of the Political Code the county treasurer is not permitted to receive any money into the county treasury unless accompanied by the certificate of the auditor provided for by section 4093 of the same code. Upon the information thus certified to him the treasurer accounts separately for and segregates into their proper funds all moneys which by law have been paid into the county treasury. (*Meyer* v. *Widber,* 126 Cal. 252, [58 Pac. 532].) It would thus appear that the requirements of sections 3827 and 3828 of the Political Code were not intended for the information and guidance of the county treasurer in receiving and refunding excess taxes, but were prescribed primarily as a matter of bookkeeping, and secondarily for the information and protection of the taxpayer.

There is no merit in the further contention that the petition does not state facts sufficient to constitute a cause of action because it was not alleged therein that the petitioner's demand for the return of the money in question had been previously approved by the auditor. It is true that subdivisions 7 and 8 of section 4101 of the Political Code prohibit county treasurers from distributing moneys in the county treasury except upon county warrants issued by the auditor. This prohibition, however, by the very terms of the section, is expressly limited to county moneys; and as the particular fund in suit here constitutes no part of the public moneys, it cannot be held that the auditor's warrant is a prerequisite to a refunding of the same. (*Corbett* v. *Widber,* 123 Cal. 154, [55 Pac. 764]; *Trower* v. *City and County of San Francisco,* 157 Cal. 762, [109 Pac. 617].)

This opinion, as we read and understand the briefs of counsel, disposes of every point made in support of the demurrer.

For the reasons stated we are still of the opinion that the lower court erred in its ruling sustaining respondent's de-

murrer to the petition for a writ of mandate, and it is therefore ordered that the judgment be reversed and the cause remanded, with instructions to the trial court to overrule the demurrer and require the defendant to answer.

Hall, J., and Kerrigan, J., concurred.