STEWART v. FLORIDA, G. & W. RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. January 20, 1919.)

No. 3225.

1. RAILROADS ⟐151—BONDS—LEGALITY OF ISSUE.
   Where railroad bonds by their terms were valid only when certified by the trustee, who was authorized to certify them as building and equipment of the road progressed on certificate of the president and chief engineer, a certification based only on a certificate of the engineer, who had ended his employment with the company years before, and who stated nothing as to equipment, *held* unauthorized, and the bonds invalid when issued.

2. RAILROADS ⟐152—RIGHT TO BONDS—LACHES.
   The failure of a contracting company, claiming the right to railroad bonds for construction work done, to demand their issue for 22 years, *held* such laches as to bar its right.

3. RAILROADS ⟐177—MORTGAGE—RIGHT OF SUBSEQUENT PURCHASER TO CONTEST VALIDITY.
   The purchaser of railroad property, claiming under an execution sale, may contest the validity of a mortgage, sought to be foreclosed thereon, and alleged to constitute a lien antedating its source of title.

Appeal from the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Suit in equity by Robert W. Stewart, substituted trustee, against the Florida, Georgia & Western Railway Company and others. Decree for defendants, and complainant appeals. Affirmed.

G. H. Brevillier, of New York City, and Fred T. Myers, of Tallahassee, Fla., for appellant.

W. J. Oven, of Tallahassee, Fla., for appellees.

Before WALKER, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree of the District Court, dismissing the bill of complaint, as amended, in the above-entitled cause, for want of equity, upon a motion to dismiss. The bill was filed for the purpose of foreclosing a railroad mortgage by the substituted trustee, and prayed the declaring of a lien on the mortgaged premises, the foreclosure and sale of the railroad, and for directions to the trustee in the execution of the trusts imposed by the mortgage or trust deed. The Seaboard Air Line Railway Company, appellee, was made a party defendant to the bill of complaint, and cited to come in and assert any interest it had in the mortgaged premises. It was upon a motion to dismiss, filed in its behalf, that the decree appealed from was rendered by the District Judge.

The motion was made upon many grounds. Among them were: (1) That the defendant was not the proper party defendant, or not sued in its proper corporate name; (2) that the certificate furnished the substituted trustee by the mortgagor company was insufficient authority to justify the trustee in certifying any bonds under the mort-

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gage; and (3) laches on the part of the owner and holder of the only bonds outstanding, in securing their issue and certification by the trustee.

The District Judge seems to have relied upon the first of the three named grounds. If, however, the decree can be sustained upon any ground contained in the motion to dismiss, the decree will be affirmed on this appeal.

The original mortgagor corporation was organized by a special act of the Legislature of Florida, approved May 7, 1891 (chapter 4098 of the Florida Laws of 1891), as a railroad company authorized to construct a railroad from Gainesville to Tallahassee, Fla., with certain branches and extensions. Certain land grants were conferred upon the corporation by the state. The corporate name was designated as the Florida, Georgia & Western Railway Company. By the terms of section 9 of the act:

"No rights shall vest under this act unless the construction of said railroad shall be commenced within ten days, and twenty miles of said road shall be completed within one year from the date of the passage of this act, and the whole of said main line shall be constructed within three years from the date hereof."

In June, 1891, a contract for the construction of the railroad was entered into with the Interstate Land & Construction Company, by which it was to build the road, in consideration of the stock, bonds, and notes of the railroad company. A mortgage was executed by the railroad company to the Central Trust Company of New York, as trustee, on October 21, 1891, which is the mortgage now sought to be foreclosed. The road was not built according to the terms of the original act of incorporation, and the land grants, at least, if not the corporate franchise also, lapsed on May 7, 1894, according to the terms of the act, and were subject to forfeiture.

On May 30, 1895, an amendatory act was approved (chapter 4477 of the Florida Laws of 1895), by which the original incorporators were reincorporated under a new name (Tallahassee Southeastern Railway Company), and granted the right to build and operate a railroad from Tallahassee to Gainesville, Fla., with extensions, and the original land grant was revived. Section 9 of the original act was amended by conferring on the new corporation all the rights vested in the old corporation by sections 6 and 7 of the original act, and which were then subject to forfeiture by the terms of the original act "upon the completion of twenty miles of said road within one year from the date of the passage of this act, and the construction of its main line from Tallahassee to Gainesville within four years from the date hereof" (May 30, 1895).

A question is made as to whether the effect of the amendatory act was to create a separate corporate entity, or merely to change the name of the entity created by the original act of 1891. The contention of the defendant is that, if it created a new corporation, there was a defect of parties to the bill, inasmuch as the new corporation was omitted as a party to it, and, if it merely changed the name of the old corporation, then the old corporation was suable only under its new

name. The District Judge held the defendant suable only under the amended name, and dismissed the bill for that reason. We think the bill should have been dismissed for both the other reasons assigned in the motion, and find it unnecessary to determine whether it was properly dismissed for the reason assigned in the court below.

[1] The terms of the bond, to be secured by the mortgage, provided that—

"This bond shall not be valid until the certificate endorsed hereon shall have been signed by the trustee or its successor or successors in the trust, and it is issued and held under and subject to the terms and conditions of said mortgage or deed of trust."

The terms of the mortgage itself provided for the certification of the bonds issued under the mortgage and delivered to the trustee by the railroad company for certification by the trustee, at the rate of $12,000 for each mile of single track of railway covered by the mortgage, and for their delivery to the railroad company, or upon the order of its president or treasurer, when certified. It also provided that—

"Before the party of the first part [the railroad company] shall be entitled to the delivery of such bonds or any thereof, the party of the first part shall deliver to said trustee a certified copy of a resolution of the board of directors or executive committee of the party of the first part, authorizing the issue of such bonds, and stating the amount of bonds required at the time, and also a certificate signed by the president and chief engineer of the party of the first part, and verified by their affidavits, showing the entire number of miles of single track of main line, branches and extensions of said railway belonging to the party of the first part, actually completed and equipped, and stations, section houses, water tanks, and all necessary appurtenances and ready for the passage of trains, and such certified copy, certificates and affidavits shall be sufficient evidence to said trustee of the truth of the statements therein contained, and shall constitute full and sufficient authority to said trustee to certify and deliver bonds of this issue at the rate aforesaid."

The bonds were valid only when certified by the trustee. The trustee was authorized to certify the bonds only upon presentation to him of evidence of the completion of the railroad, or a part of it of the kind described in the mortgage. If the bonds were not certified at all, or if they were certified without proper authority, they would be invalid in the hands of the original holder, and would not constitute a lien upon the premises described in the mortgage. The bill discloses that bonds in the amount of $84,000 were certified by the substituted trustee. None was certified by the original trustee. The bonds were certified to by the substituted trustee at the request of the contractor, as averred in the bill, and the substituted trustee was directed by the railroad company to deliver the bonds to Mrs. E. J. H. Richardson for account of the contractor. The bonds must therefore be treated as being held by the contractor when the foreclosure bill was filed. These are the only bonds outstanding under the mortgage. The certificate of the chief engineer, on which the substituted trustee acted in certifying these bonds, is attached as an exhibit to the bill. We think it was insufficient on its face to justify the certification of the bonds. In the first place, it affirmatively shows that the maker of it had long ceased to have any official connection with the railroad company. The

terms of the mortgage contemplate that the maker of the sworn certificate shall bear an official relation to the railroad company when the certificate is made. The sanction arising from the trust relation of officer is important. The certificate of a stranger is obviously less to be relied upon.

Again, the certificate of the former chief engineer is not to the effect that, while he was chief engineer, a single mile of track of main line, branches, and extensions of said railway, belonging to the party of the first part, was "completed and equipped with stations, section houses, water tanks and all necessary appurtenances, and ready for passage of trains." It only asserts that "the track was laid and said road completed for seven miles from Tallahassee towards Perry, and was in operation for construction purposes." He does certify that, at the time of making the certificate in May, 1913, 30 miles of road, commencing at Tallahassee, was in operation and equipped with stations, section houses, water tanks and all necessary appurtenances, and being used in the passage of trains." The difference of manner of statement would seem to be deliberate and advised. The want of authority in the former chief engineer to certify as to a status, long after his official relation terminated, is obvious. The mortgage requires the sworn certificate of both the president and chief engineer to be presented to the trustee before bonds can be certified. A failure to comply with this requirement would invalidate bonds in the hands of the original holder. For these reasons the action of the substituted trustee in certifying and delivering the bonds was unauthorized; the bonds so certified had no validity, and never obtained the protection of the lien of the mortgage; and, there being no other bonds outstanding, secured by the mortgage, no reason for its foreclosure is shown by the bill.

[2] Again, the amended bill of complaint avers that bonds in the par value of $84,000 were delivered by the railroad company to the original trustee for certification prior to the year 1893, and that the contractor had, prior to the year 1893, completed seven miles of railroad and then had become entitled to receive $84,000 of the first mortgage bonds of the original railroad company. The construction contract between the railroad company and the contractor provided for the delivery to the contractor by the railroad company of its first mortgage bonds, in amounts of not more than $12,000 per mile of its railroad, "at such time as said Interstate Land & Construction Company shall request." This imposed an affirmative duty on the part of the contractor to make a request of the railroad company for the bonds to which it became entitled. The bill avers that bonds in the amount of $84,000 were delivered to the original trustee for certification prior to 1893. They were first certified by the substituted trustee after September 3, 1915, a period up to 22 years. If the contractor had secured its certified bonds, it may be true that it might delay their enforcement, though interest was not currently paid, until their maturity, before prescription would begin to run, or it be charged with laches. The laches in this case is predicated on the failure of the contractor, for 22 years, to secure the possession of bonds to which the

bill avers he was entitled during all this period, and not upon his failure to enforce their collection. If the railroad company wrongfully withheld delivery of the bonds, or the trustee wrongfully refused to certify them, the contractor had a remedy against either or both, which he failed to resort to for a period of more than 20 years. The evidence then at hand upon the issue of his right to the bonds may long have disappeared. The period of prescription was intended to cover such a case.

The bill affirmatively shows a delay of more than 20 years to resort to a remedy to secure delivery of the bonds, and there is no attempt in the bill to explain the delay. We think the bill shows that the cause of action is barred by laches. Bryan v. Kales, 134 U. S. 126, 10 Sup. Ct. 435, 33 L. Ed. 829; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437, 31 L. Ed. 396; Abraham v. Ordway, 158 U. S. 421, 15 Sup. Ct. 894, 39 L. Ed. 1036; Mackall v. Willoughby, 167 U. S. 637, 17 Sup.. Ct. 954, 42 L. Ed. 323; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Foster v. Mansfield C. & L. M. R. Co., 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899. It is hardly consistent with the ordinary course of business that a contractor, if entitled to the bonds, would have been content to postpone securing possession of them for 22 years. Presumably, either the contractor failed to perform his contract and lost his right to the bonds, or the railroad enterprise itself failed, because of the noncompletion of the railroad in 3 years, or of a 20-mile section in one year from the approval of the act of May 7, 1891, and the right to the bonds became valueless, until at least the forfeiture was relieved by the amendatory act of 1895. We are clearly of the opinion that the only holder of outstanding bonds issued under the mortgage delayed asserting its right until barred by laches.

[3] The contention is advanced by appellant that the Seaboard Air Line Railway Company, on whose motion to dismiss the decree was rendered, is not in a position to rely upon either the insufficiency of the certificate of the chief engineer to invalidate the bonds, or upon the laches of the contractor, as a defense to the bill. The bill alleges that the defendant, the Seaboard Air Line Railway Company, has, or claims to have, an interest in the mortgaged premises adverse to plaintiff, as the successor or assign of James M. Mayo, who purchased the physical property of the railroad under an execution issued on a judgment in his favor against it. It is also averred that Mayo subsequently conveyed his rights to the Tallahassee Southeastern Railway Company, and that the Seaboard Air Line Railway Company claims through Mayo, and consequently through his grantee. It is contended that the sale to Mayo was void, because the franchise was not conveyed to him. However, he and his successors in title took and maintained possession of and operated the railroad. It also appears that the physical property and the franchise were joined again by the conveyance from Mayo to the Tallahassee Southeastern Railway Company, in which the Legislature had vested or revived the original franchise of the Florida, Georgia & Western Railway Company.

The bill therefore shows, at least by fair inference, that the Seaboard Air Line Railway Company acquired its interest in the tangible property from Mayo, a judgment creditor of and a purchaser at execution sale from the original railroad company, and that it also acquired the franchise to operate the railroad from the Tallahassee Southeastern Railway Company, in which it was vested by the Legislature of Florida. Invested with the title of the judgment creditor and purchaser at execution sale, the Seaboard Air Line Railway Company was entitled to defend against the foreclosure of a mortgage that the bill averred outranked in priority of lien the judgment and the title acquired by the purchaser at execution sale under it.

For the reasons assigned, we think the decree dismissing the bill of complaint should be affirmed, with costs; and it is so ordered.

Affirmed.