FIDELITY & CASUALTY CO. OF NEW YORK v. LIVINGSTON.

1. SUBROGATION—SURETY'S EQUITIES ATTACH ON DATE OF BOND—ASSIGNMENTS.

The equities of the surety on a sewer contractor's bond, as matter of contract and law, attached on the date of the bond, where the contractor, in his application for the bond, agreed that the surety should be subrogated to all the rights and property of the applicant arising out of said contract, and, therefore, its rights are superior to the rights of a bank under a subsequent assignment from the contractor to repay a loan made to him.[1]

2. SAME—SURETY ENTITLED TO MONEY ASSIGNED TO BANK BY CONTRACTOR.

Where the surety on a sewer contractor's bond had superior equities in money due on the contract by reason of the contractor's default and loss sustained thereby, it was entitled to the money which a bank received on an assignment from the contractor and applied on a loan to him, but not to the money which simply passed through the bank's hands and was used to pay for labor and materials.[2]

BIRD, C. J., and McDONALD, J., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 8, 1926. (Docket No. 72.) Decided April 14, 1926.

Bill by the Fidelity & Casualty Company of New York against Milton C. Livingston, the First National Bank of Pontiac, and the city of Detroit for an accounting, and injunction, and for subrogation to the rights of defendant Livingston in a sewer contract. From the decree rendered, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Bishop, Kilpatrick & Weaver*, for plaintiff.

*Pelton & McGee*, for defendant bank.

[1]Subrogation, 37 Cyc. p. 428; [2]Id., 37 Cyc. p. 429.
On right of surety on contractor's bond as against assignee of fund, see note in L. R. A. 1918D, 736.

McDONALD, J. (*dissenting*).   This is an appeal from a decree dismissing the plaintiff's bill which was filed for an accounting with the city of Detroit and the First National Bank of Pontiac, and for an injunction restraining the city from paying the bank any money on an assignment from defendant Livingston, and for the subrogation of the plaintiff to the rights of Livingston in a construction contract which he had with the city.   On September 27, 1921, the city of Detroit entered into a contract with defendant Livingston for the construction of a sewer for the sum of $38,068.   Livingston gave the customary statutory bond and a faithful performance bond with the plaintiff as surety.   The contract called for the construction of 10,880 feet of sewer.   After Livingston had completed 10,000 feet he abandoned the contract.   The plaintiff took over the work and completed it at a loss of $6,152.19.   While Livingston was in charge of the work he borrowed $5,000 from the defendant bank, and gave it an assignment for that amount of money due on the contract.   Livingston's contract with the city provided that no assignment of any money payable thereunder should be effective without the consent of the commissioner of public works.   The assignment to the bank was consented to in writing by the commissioner, as follows:

"Approved, except as to labor claims and claims for material for this work."

The assignment was made on December 12, 1921, and on December 16, 1921, the city gave its check for $4,667.44 on account thereof, payable to the joint order of Livingston and the bank.   This check, properly indorsed, was deposited in Livingston's commercial account at the bank.   One thousand dollars of the money was· paid by him on his indebtedness to the bank, and the balance was used in payment for construction work on the sewer.   After this suit was

started the city paid the plaintiff $15,182.81, that amount being the balance due on completion of the work. So that the only issue now involved relates to the $4,667.44 which the city paid on the assignment. It is the claim of the plaintiff that its right to this money is superior to that of the bank, and that legally and equitably it is entitled to have it applied in payment of its loss. On the hearing the court entered a decree granting relief as to defendant Livingston, but dismissing the bill as to the bank. The plaintiff has appealed.

Under the theory that an assignee takes no greater right or interest than that possessed by his assignor, the plaintiff argues that inasmuch as Livingston owed $11,619.67 for materials at the time of the assignment, he was not entitled to the payment of the $4,667.44, that the city should have retained that amount, or would have retained it if it had known the facts, to protect the materialmen whose claims the plaintiff, as surety, was subsequently required to pay; and that, therefore, the bank's interest in the fund assigned is subject to the amount then due the materialmen.

By the terms of the contract between the city and Livingston, it was the duty of the city to retain out of each estimate 10 per cent. of the amount and value of the work done by the contractor, and 20 per cent. of the value of materials delivered. It seems to be conceded that when the estimate of $4,667.44 was made and paid, the city retained the 10 per cent. and 20 per cent. required by the contract. The city could retain no greater amount, except in case the materialmen had filed sworn statements of amounts due and unpaid for material, in which event it could withhold sufficient money to pay their claims. The contract so provided. But as no such statements were filed the contractor had a right to insist on the payment

of the $4,667.44, and the city had a right to pay it. The city had no greater rights or duties than those authorized by the contract. So that when the commissioner wrote on the assignment the city's approval, "except as to labor claims and claims for material for this work," he had reference only to such claims as materialmen might establish by filing sworn statements as provided by the contract, and to the 10 per cent. and 20 per cent. amounts which it was required to retain. As no such statements had been filed, and as the city had retained the amounts which it was authorized to retain under the contract, the exception to the approval was without effect upon the assignment. In this connection it is urged by counsel that it was the practice of the city to withhold sufficient money to pay labor and material claims. The contract and not the practice controls and fixes the rights of the parties. We think that, under the circumstances of this case, the contractor had a right to make the assignment, to insist on the payment of the money, and that the city would not have been warranted in refusing to pay. If it were money that should have been retained or which was in the hands of the city at the time plaintiff's liability arose, there would be no question as to the superior rights of the surety and its right to follow the funds in possession of the bank. *Board of County Road Com'rs of Calhoun Co.* v. *Surety Co.,* 216 Mich. 528.

But this money was paid on an estimate in which all that the city could retain under the contract was retained. It was paid during the progress of the work, and therefore before plaintiff's liability accrued. To the extent that it was used in the construction of the work, the surety company benefited. It is clear from the evidence that the money went into the contractor's bank account, that he used $3,667.44 of it in payment for work and materials on the construction,

and gave the bank the balance as part payment of a loan for money which also went into the construction work. It thus appears that the plaintiff surety did not suffer any loss by the assignment and the payment of this money to the bank. It cannot complain that the city paid out money to the contractor or his assignee according to contract, as the work progressed. It could not ask that the city retain any of this money. Its only right was to have the city retain such amounts as the contract required it to retain and to hold what remained in its hands when the surety became liable and was compelled to complete the work. We think that the circuit judge made an equitable disposition of the matter in issue.

The decree should be affirmed, with costs to the defendants.

BIRD, C. J., concurred with McDONALD, J.

FELLOWS, J.  I am unable to concur in the opinion of Mr. Justice McDONALD in this case. I am satisfied that the principle laid down and the authorities considered and cited in *Board of County Road Com'rs of Calhoun Co.* v. *Surety Co.*, 216 Mich. 528, settles the law in this State in accordance with the overwhelming weight of authority that the rights of the surety on bonds of the character here involved are superior to the rights of the assignee of the contractor who holds assignment of the amount due him or claimed to be due him. I think the infirmity in my Brother's opinion is in his assumption that the contractor, Livingston, at the time the order was issued could have compelled payment to him by the city. If at that time Livingston had insisted on payment, and it had appeared as this record discloses the fact to be, that he then owed the Cadillac Clay Company $6,481.44 and the United Fuel & Supply Company $5,138.23 for material that went into the job, it is obvious to me

that his claim for a present payment could not have
been sustained. The city could not have been re-
quired to make a payment which in law would dis-
charge the surety either entirely or *pro tanto* and in
*Sandusky Grain Co.* v. *Condensed Milk Co.*, 214 Mich.
306, we held that payments made to the contractor
which did not reach the laborer or materialmen dis-
charged the surety, at least *pro tanto*. Such payment
would be a voluntary payment discharging the surety
and could not be required of the city. The clause in
the contract giving the materialmen the right to file
an affidavit of their claim permitted the city to pay
direct to them, but this did not deprive the materialmen
of the benefit of the bond, and if they chose they could
sue direct on the bond, and if the surety paid it would
be subrogated. The city quite clearly recognized
that materialmen and laborers must be paid before
the contractor or his assignee had anything coming,
and made only the limited and conditional acceptance
quoted by my Brother.

In the final analysis the case must be determined, I
think, by the determination of the date at which the
rights and equities of the parties attached. If the
rights and equities of the surety attached on the ex-
ecution of the bond or relate back to that date, they
are superior to those of the assignee, because at the
date of the assignment the contractor had nothing to
assign. I think both as matter of contract and as
matter of law the surety's equities attached on the
date of the bond. The contractor, Livingston, ap-
plied to the surety company to become his surety on
September 27, 1921, and in the application agreed:

"That if the applicant shall fail to comply with the
conditions of the contract for which the said bond is
to be given, the applicant's title in and right of posses-
sion of the plant and materials concerned with the
said contract shall immediately vest in the company,
*and the company shall be subrogated to all the rights*

*and property of the applicant arising out of the said contract;* and in such event the company shall have the right and the opportunity to assume the remainder of the said contract, and, at its option, to perform or to sublet the same."

I shall not undertake a review of the authorities. A large number of them were cited by Justice CLARK in *Board of County Road Com'rs of Calhoun Co.* v. *Surety Co., supra.* I think the Supreme Court of the United States settled the question in *Prairie State Bank* v. *United States,* 164 U. S. 227 (17 Sup. Ct. 142). In that case the bank and the surety company both claimed the fund. Mr. Justice White who wrote the opinion thus states the question before the court:

"The question to be determined is which of the two contestants possesses a superior right to the fund."

He then considers the question of subrogation and says:

"Under the principles thus governing subrogation, it is clear whilst Hitchcock was entitled to subrogation, the bank was not. The former in making his payments discharged an obligation due by Sundberg for the performance of which he, Hitchcock, was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement and of supposed rights acquired thereunder. The sole question, therefore, is whether the equitable lien, which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising from and relating back to the date of the original contract, or as taking its origin solely from the date of the advance by him."

And after an exhaustive review of the authorities concludes:

"Sundberg & Company could not transfer to the

bank any greater rights in the fund than they themselves possessed. Their rights were subordinate to those of the United States and the sureties. Depending, therefore, solely upon rights claimed to have been derived in February, 1890, by express contract with Sundberg & Company, it necessarily results that the equity, if any, acquired by the Prairie Bank in the ten per cent. fund then in existence and thereafter to arise was subordinate to the equity which had, in May, 1888, arisen in favor of the surety Hitchcock."

This case has been many times cited by State courts and in *Hardaway* v. *Surety Co.*, 211 U. S. 552 (29 Sup. Ct. 202), and *Henningsen* v. *Guaranty Co.*, 208 U. S. 404 (28 Sup. Ct. 389). In the last cited case the court quoted with approval the following language from the opinion of the circuit court of appeals:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money."

But it is said the money was loaned to Livingston to be used on this job and was so used. I think the testimony is rather hazy on this claim, but, be that as it may, precisely the same claim was made and overruled in *Wasco County* v. *Insurance Co.*, 88 Or. 465 (172 Pac. 126, L. R. A. 1918D, 732, Ann. Cas. 1918E, 656), upon which case *Board of County Road Com'rs of Calhoun Co.* v. *Surety Co.*, *supra*, is largely bottomed. The opinion in that case contains an exhaustive consideration of the cases, and decision rests on the rule, recognized almost universally, that the equities of the surety, having attached at the date of the bond, are superior to those of an assignee (who is at most a volunteer) of later date. It was there said:

"When the bank loaned its money it knew that before Cromer entered upon the performance of his contract he had given a bond signed by a surety, and that the law required the county to reserve 25 per cent. of each monthly estimate. From the date of the contract of suretyship the bank was bound to know that the insurance company had an equity in the funds to be reserved; and when the bank loaned its money it did something that it was not obliged to do, and it must be deemed to have acted with a full knowledge of the right of the surety. The contractor and the bank could not create a lien in favor of the bank upon the reserved fund and make it paramount to a prior and then existing lien of the surety. *First Nat. Bank* v. *Surety Co.*, 52 C. C. A. 313, 114 Fed. 529, 532; *Hardaway* v. *Surety Co.*, 80 C. C. A. 283, 150 Fed. 465, 473, and affirmed in 211 U. S. 552, 561 (29 Sup. Ct. 202) ; *Title Guaranty & Surety Co.* v. *Dutcher*, 203 Fed. 167, 169; *Illinois Surety Co.* v. *City of Galion*, 211 Fed. 161, 163; *In re P. McGarry & Son*, 153 C. C. A. 326, 240 Fed. 400, 402; *Columbia Digger Co.* v. *Sparks*, 142 C. C. A. 304, 227 Fed. 780, 784; Stearns, Suretyship, § 482."

Livingston, the contractor, used $3,667.44 to pay labor and materialmen's claims; the bank had $1,000, which it applied on its note. In my judgment it should respond for the thousand dollars but should not respond for the $3,667.44 simply because it passed through its hands.

The decree is reversed and one here entered in accordance herewith, with costs to plaintiff.

SHARPE, SNOW, STEERE, WIEST, and CLARK, JJ., concurred with FELLOWS, J.