[Civ. No. 1027.   Fourth Appellate District.—September 23, 1932.]

BUENA VISTA WATER STORAGE DISTRICT, Petitioner, v. J. P. SHIELDS, County Treasurer, etc., Respondent.

J. E. Woolley and Vincent J. McGovern for Petitioner.

Ray Bailey, District Attorney, and W. A. McGinn, Deputy District Attorney, for Respondent.

Thornton and Watt, John Ralph Wilson and Myrick & Deering and Scott, as *Amici Curiae.*

BARNARD, P. J.—This is an application for a writ of mandate, an alternative writ having been issued by the Supreme Court and made returnable before this court. The purpose of the action is to compel the respondent county treasurer to pay from a fund asserted to be in the county treasury to the credit of the petitioner, a certain warrant issued by the petitioner district.

The petition alleges that the petitioner is a water storage district organized and existing under and by virtue of the California Water Storage District Act; that the respondent Shields is the county treasurer of Kern County; that in the year 1929 an assessment was levied upon the lands within the district in the sum of $942,731.11, the assessment being unpaid and bonds being issued and sold for that amount in accordance with the provisions of the Water Storage District Act; that pursuant to the provisions of the act named, the petitioner has from time to time called installments of accrued interest on said assessment and said installments have been paid to respondent and by him forthwith paid into the county treasury of Kern County to the credit of the bond fund of petitioner; that on June 28, 1932, and ever since that date, there has been and now is on deposit in said county treasury to the credit of said bond fund the sum of $31,861.81; that on June 28, 1932, pursuant to a resolution of its board of directors the peti-

tioner made and issued its warrant, drawn on respondent, in the sum of $28,281.93, for the purpose of paying the bond interest due and payable on July 1, 1932; that said warrant was presented for payment to the respondent on June 30, 1932; and that said respondent refused and still refuses to pay the same.

In his return to the writ the respondent admits most of the allegations of the petition but justifies his refusal to pay the warrant upon two grounds. While admitting that the amounts alleged to have been paid to him by the land owners in the district were actually received by him as county treasurer and that they were by him paid into the county treasury, it is alleged that this was done by him without the authority of the auditor of that county, and that he has never received the authorization of said auditor to receive said assessments into the county treasury. As a second defense he alleges that he placed all of the moneys received on said assessments in a separate parcel; that at all times he kept said moneys segregated, separate and apart in said parcel from other moneys in the county treasury; that about noon on June 25, 1932, the parcel containing said moneys thus received on said assessments was feloniously and forcibly taken from the possession of a deputy county treasurer of said county; and that, by reason of said robbery, there are not sufficient funds in the county treasury of Kern County to the credit of the bond fund of the said water storage district with which to pay the warrant in question.

At the oral argument it was stipulated that there was at the time the warrant was presented sufficient money in the county treasury to pay the same. Testimony was introduced to the effect that the amounts paid in on the assessment in question were kept in the treasurer's office in a certain leather wallet, segregated from other funds, and that on June 25, 1932, at a time when the deputy treasurer had brought out the wallet for the purpose of exchanging certain bills therein for certain other bills, the wallet was taken from the deputy at the point of a gun. In the argument and in the briefs, the first defense interposed by the respondent has been enlarged by adding the contention that the treasurer may not, under the law, pay out any of

these funds except upon a warrant drawn by the county auditor.

The first point presented by respondent and by *amici curiae* in his behalf is that such funds as are here involved may only be received by a county treasurer upon the certificate of the county auditor and may only be paid out upon a warrant drawn by the county auditor, for the reason that certain statutes relating to the duties of a county treasurer and a county auditor apply to the handling of the funds of such a district as this and that, as so applied and considered in connection with the provisions of the Water Storage District Act, these statutes are controlling. The statutes especially relied upon are sections 4093, 4101 and 4102 of the Political Code. Section 4102 provides that the treasurer must receive no money into the treasury or for deposit with him as treasurer unless accompanied by the certificate of the auditor, which is provided for in section 4093. Section 4093 reads as follows:

"Settlement with debtors of county. The auditor must examine and settle the accounts of all persons indebted to the county, or holding moneys payable into the county treasury, and must certify the amount to the treasurer, and upon the presentation and filing of the treasurer's receipt therefor, give to such persons a discharge, and charge the treasurer with the amount received by him, provided, that all persons, or officers, indebted to the county or holding moneys payable into the county treasury, must make oath, before the auditor, of the total amount of money payable by him to the county or into the county treasury, and on what account. Moneys payable into the county treasury, as the term is used in this section, shall include moneys belonging to estates of deceased persons and required by law to be paid to the county treasurer, taxes on inheritances and transfers, all moneys deposited by order of court, and all other moneys deposited with such treasurer by virtue of any official authority whatever."

Section 4101 provides in part that the treasurer must:

"2. File and keep the certificates of the auditor delivered to him when moneys are paid into the treasury.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"6. Disburse the county moneys and all other money placed in his custody by official authority only on county

warrants issued by the county auditor, except on settlement with the state.''

The claim of petitioner is based upon the Water Storage District Act (Stats. 1921, p. 1727), with its subsequent amendments. The provisions of this act are numerous and of considerable length, and it will only be necessary to call attention to certain portions thereof. After various provisions relating to the formation and control of such a district, and the levying of assessments for the purpose of carrying out the purposes thereof, section 19 of the act provides that two copies of the assessment-roll, as finally fixed, shall be certified and transmitted to the board of directors of the district, who shall file one copy in their records and transmit one copy to the county treasurer. It is then provided in section 20 that such assessment list must remain open for payment in the office of the county treasurer for a period of thirty days, during which time any person may pay the amount of the charge assessed against his land to the county treasurer. By section 21 it is provided, among other things, that at the end of thirty days the county treasurer must make a return to the board of directors of the district of all assessments paid, and that, ''Thereafter all unpaid assessments and accrued interest shall be collected when and as called, and paid to the treasurer of the county or counties, who shall collect and hold such moneys to the credit of the district.'' This section has other provisions to the effect that moneys collected by the treasurer shall be deposited to the proper fund of the district and to the credit of the district. Section 24 of the act provides, among other things, for the issuance of bonds. It is conceded that in pursuance of these provisions this particular district has so issued bonds. This section also contains the following provisions:

''All moneys collected by a county treasurer upon any assessment upon which bonds shall have been issued, including all moneys derived from sale of land for delinquent instalments, or from redemption thereof, or from sale of lands brought by such treasurer at any such sale as trustee of the bond fund of the district, shall be by such treasurer forthwith paid into the county treasury of the county from which the same arose to the credit of the bond fund of such water storage district, and shall be used exclusively

for the payment of principal and interest of said bonds issued on such assessment.''

•   •   •   •   •   •   •   •   •   •   •   •   •   •

''All moneys collected by any county treasurer upon account of an assessment on which bonds shall not have been issued shall be similarly accounted for to the treasurer of the district, and shall be credited to the general fund of the district.''

•   •   •   •   •   •   •   •   •   •   •   •   •   •

''The county treasury. of each of the several counties shall report all transactions of delinquencies and sales to the treasurer of the district, who shall keep a record thereof in the office of the district.'' ·

Section 28 contains the following:

''All claims against the district shall be paid by warrants of said district. To provide a fund for that purpose the board of directors may from time to time draw from the general fund deposited and kept to the credit of the district in the office of the county treasurer of a county having funds belonging to the district in his possession sums aggregating not more than twenty-five thousand dollars, which said sum shall be deposited with the treasurer of the district and paid out by him upon warrants of the district, and he shall report to the board of directors in writing at its regular meeting in each month the amount of money in the district treasury and the amount of receipts and the amount and items of expenditures for the month preceding, which said report shall be verified and filed with the secretary of the board.''

Section 56 provides in part as follows:

''Warrants drawn by the board of directors shall be signed by its president and secretary and countersigned by its treasurer, and shall be drawn upon the county treasurer of a county having funds belonging to the district in his possession for payment of the principal or interest of bonds, and upon the treasurer of the district or the county treasurer of such a county, as the case may be, for payment of all other claims and demands.''

It is argued on behalf of respondent that the provisions of the Political Code, above referred to, were intended by the legislature to be a part of the Water Storage District Act, and that, until those provisions are complied with, the

money raised by and for the purposes of such a district can neither be received into the county treasury nor paid out therefrom. While this act provides that the amount of the district assessments shall be paid to the county treasurer, shall by him be forthwith deposited in the county treasury in a fund to the credit of the district, and shall be paid out upon warrants drawn by the officers of the district and directed to the treasurer, a somewhat different procedure is contended for by respondent. It is argued that when any land owner pays his assessment to the county treasurer he must obtain a receipt therefor; that he is then required to present this receipt to the county auditor; that he must then make oath as to the amount of money payable by him and on what account the payment is made; that the auditor must file the taxpayer's receipt and charge the treasurer; that the auditor must give to the land owner a discharge; that the auditor must certify the amount to the treasurer; that the treasurer may not deposit the amount in the county treasury until furnished with such a certificate from the auditor; and that the money may then be paid out by the treasurer only upon the warrant of the auditor. It is argued that this gives the auditor the necessary check upon the transaction, and the inference seems to be that in some unexplained manner the warrant drawn by the district, as provided for in the act, shall be by the payee taken to the county auditor and exchanged for a corresponding warrant drawn by the auditor.

In our opinon, the suggested procedure adds to the Water Storage District Act a number of provisions not placed therein by the legislature. By the terms of that act itself, no duty is placed upon the county auditor and no provision is made for giving him such information as would naturally be required to enable him to keep a check upon the transactions involved, although under general statutes he is furnished with the information needed in order to keep a check upon those transactions in which his certificate and warrant addressed to the county treasurer are required. On the other hand, the storage act makes full provision for a complete check upon all transactions of the county treasurer in connection with district affairs, by the board of directors of the district, including the making of frequent and complete reports, and the provision

that each shall keep a copy of the assessment-roll. In addition, the act in question contains definite and specific provisions for the paying out of the funds upon warrants drawn by officers of the district and directed to the county treasurer.

It was held that section 4101 of the Political Code, as it formerly read, prohibiting the county treasurer from paying out moneys in the county treasury except upon warrants issued by the auditor, applied only to county moneys (*MacMullan* v. *Kelly*, 19 Cal. App. 700 [127 Pac. 819]). This section of the code and a number of related sections were so amended in 1911 as to extend this prohibition to any money paid into the county treasury or placed in the custody of the county treasurer by official authority, to require that a certificate of the auditor accompany any such money paid into the treasury and to require that no such moneys be paid out except upon a warrant issued by the county auditor. As so amended, these respective sections would seem to be broad enough to cover the situation here in controversy and, in the absence of any other expression from the legislature, might well be held to be controlling in the question before us. But the legislature, having the power to enlarge the scope of these statutes, as was apparently done in the amendments of 1911, likewise had the power to restrict their scope or to require a different procedure in a specific instance. The Water Storage District Act was passed ten years later than these amendments and we are called upon to decide whether, in passing this act, the legislature intended to include therein and make a part thereof, those amended sections of the Political Code which have been referred to. In 23 California Jurisprudence, at page 762, the general rule of statutory construction is thus set forth:

"It is a settled rule of statutory construction that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject as against the general provision, although the latter standing alone would be broad enough to include the subject to which the more particular provisions relate. Moreover a provision, although

expressed in general and comprehensive language, is construed with reference to the general intent of the act.''

In *Estate of Brewer,* 156 Cal. 89 [103 Pac. 486], the court said: ''But 'where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although latest in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter as far as coming within its particular provisions'.''

Some of the provisions of the act here in question are inconsistent with these prior statutes and cannot be reconciled therewith except by reading into the act a number of provisions that were definitely omitted therefrom by the legislature.

The Water Storage District Act is a special act passed for a definite and specific purpose and containing a full and complete procedure for raising money and paying claims incurred in carrying out the purposes of the act. Although the machinery therein provided for raising and spending money differs in several material respects from the corresponding plan of handling the general finances of a county, it would appear that such different procedure was intentionally inserted in the act by the legislature. Not only would this appear from the omission of the very considerable requirements which the respondent would now read into the act, but from its affirmative provisions requiring assessments to be paid directly to the county treasurer, requiring that a copy of the assessment-roll be furnished to the county treasurer and kept in his office, requiring him to forthwith deposit all moneys collected in the county treasury, and authorizing and requiring him to pay out the same upon district warrants only. In our opinion this is a case where a specific act of the legislature must be held to be controlling over prior existing general statutes. We take it that this act means what it says when it provides that land owners in the district must pay their assessments to the county treasurer, that the county treasurer shall forthwith pay this money into the county treasury, and that the county treasurer must pay out this money upon a warrant issued by the officers of the district. And that it was the intention of the legislature in enacting this statute to have the provisions thereof, which are complete in them-

selves, govern and control in the handling of funds raised for the use of such districts.

█ The second point raised is that it was the right and duty of the county treasurer to keep the funds collected for the petitioner segregated from county funds, that because of the robbery referred to there is not sufficient money in this particular fund in the county treasury to pay the warrant in question, and that this constitutes a complete defense in this proceeding. In effect, the contention is that the funds stolen were in fact the property of the district and that the consequent loss must fall upon the water storage district. In support of this contention, we are referred to the provisions of the act, that the assessments referred to shall be collected by the county treasurer and held to the credit of the district, that they shall be deposited in the proper fund of the district, that they shall be deposited to the credit of the district, that they be credited to the bond fund of the district, and many others of like import. It is argued that these various provisions not only contemplate that all moneys collected for the district shall be credited to the district in a particular fund, but that they authorize and require the county treasurer to make a physical segregation, keeping such moneys separate and apart from other funds in the treasury. No law to this effect is pointed out to us, the act itself is specific in requiring such moneys to be paid into the county treasury, and we are unable to see in the provisions referred to anything other than a requirement of bookkeeping. Taking the act as a whole, it seems to clearly provide that while a record of such a fund shall be kept, and while the district shall be credited in this fund with moneys collected for it, the actual cash shall be placed in the county treasury. The very act of placing money in a ''treasury'' seems to imply a mingling with other moneys therein, and negatives the idea that money so placed shall retain its identity. The provisions that moneys collected under the terms of the act shall be placed in the treasury and entered in a bond fund to the credit of the district are, to our minds, inconsistent with the idea that such moneys are merely to be held in the custody of the treasurer, kept separate and apart from all other moneys in his custody, and that the specific cash is to remain the property of the district.

In the case before us, it is admitted that certain money has been paid into the county treasury. We feel constrained to hold that this has been done in accordance with the provisions of the act, and that this money, having been legally placed in the county treasury, must be considered as remaining there until it has been legally withdrawn in accordance with the terms of the act. While a county treasurer may and must keep track of the various funds in his custody, when money is placed in the county treasury under the provisions of this act, particular bills and coins may not be earmarked as those belonging to the district. If a county treasurer feels compelled to accede to the demands of a robber that money be handed over to him, we think that such a treasurer may neither elect which particular fund he shall hand over, nor may he say that it was the particular property of such a district as this which was handed over, any more than could a bank charge a similar loss to the account of a particular depositor upon the claim that the money taken actually came from that source.

Not only do we think that such a physical segregation of money as is claimed to have existed here is not authorized by law, but the evidence shows that the amounts collected for this district were not at all times kept by the County Treasurer separate and distinct from other funds in his possession. While the treasurer testified that it was his custom to put checks paid in by land owners in this district in this particular leather wallet, he also testified that upon the assessment involved here he received a check from Miller & Lux, Inc., for $21,272.23; that shortly thereafter an agent of a bank came into his office with a bunch of claims against the county; and that he used this check from Miller & Lux to pay these claims, taking back a cashier's check from the bank for $9,000, to cover the difference. He testified that it was his usual custom to use checks received in payment of assessments of this district in clearing county claims with the bank, and that "almost immediately" thereafter he would take a corresponding amount of cash out of the cash drawer and place it in the wallet referred to. He further testified that on the day of this robbery there was $41,000 and some odd dollars on his

books to the credit of this water storage district; that all of the money belonging to the district was not in this leather wallet; and that at the time something like $34,000 was in the wallet while about $7,600 was in the hands of the receiver of a building and loan association. He also testified that at the time of the robbery his deputy had taken this wallet out for the purpose of making change; that it was their custom to put one-dollar bills as they accumulated in this particular wallet; and that on the occasion in question the deputy was going to take $10 in one-dollar bills out of this wallet and put them in the county wallet in anticipation of a call for one-dollar bills from various county offices.

In view of the evidence that this district, on the date in question, had a credit upon the books of the county treasurer, and in the fund in that treasury created by assessments it had made in pursuance of the provisions of this act, sufficient to cover the warrant drawn, that the warrant was drawn in the manner provided by the act, and in view of the stipulation that there were sufficient funds in the treasury of the county at that time to pay the amount of the warrant, we think the writ applied for should issue.

It is argued with much force that under the Constitution no county can give or loan its credit to or in aid of any person, and that to use county money to reimburse a water storage district for its losses would be a violation of this provision. This argument presupposes that the money stolen from this County Treasurer was the particular property of this district, a premise which we cannot accept.

Let a peremptory writ issue as prayed for.

Marks, J., and Harden, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 20, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of

Appeal, was denied by the Supreme Court on November 21, 1932.

Seawell, J., dissenting, wrote the following opinion thereon:

SEAWELL, J.—I am in accord with the conclusion of the Appellate Court that the entire loss due to the alleged robbery cannot be cast upon the petitioning Water Storage District. My decision that a hearing should be granted is based on the proposition that when moneys in the custody of the county treasurer in his office are taken from him by robbery it cannot be said that any particular funds have been stolen, but rather it must be held that the sum total of funds in the custody of the treasurer is reduced *pro tanto* by the robbery. The total of funds in the legal custody of the county treasurer consists in part of funds which are the property of the county, and in part of the funds of the Water Storage District, which is petitioner herein, and of irrigation and other districts, if such there be, which under the law deposit moneys with the county treasurer of Kern County. When the sum total of all funds in the custody of the treasurer is reduced by robbery, I am of the view that the loss affects the entire fund in the treasury and should be borne proportionately by all who have an interest in the fund. The treasury, in which all funds are in the custody of the treasurer by law, sustains the loss, and not any particular unit or special fund, equally entitled with all others, to protection. The error of the Appellate Court's decision, in my opinion, is that it seems to relieve the petitioning Water Storage District from bearing its proportionate share of the loss, and to throw the entire loss upon the county and other districts which may have funds on deposit in the county treasury.

It may be that after charging to the Water Storage District its proportionate share of the loss alleged to be due to robbery, sufficient funds would still remain to the credit of the district to pay the particular warrant involved in the instant *mandamus* proceeding. But if this is the situation, the decision should be placed upon that ground.

The answer sets up the defense of robbery. No finding of fact was made as to that issue. Such evidence as was

introduced was purely hearsay and entirely inconclusive to establish such a defense. In fact, the question of robbery or no robbery seems to have been subordinated to the questions of law to which the District Court of Appeal directed its attention.

The foregoing reasons constitute the grounds upon which I disagree with the majority of the court.